IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RAYMOND HOWARD SMITH MCVAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO.: 2:14-cv-897-WC |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Raymond Howard Smith McVay ("Plaintiff") filed applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on June 21, 2011. His applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of July 18, 2009, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

>    (1) Is the person presently unemployed?
>    (2) Is the person's impairment severe?
>    (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>Impairments]?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel* is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**III.    ADMINISTRATIVE PROCEEDINGS**

Plaintiff, who was thirty-two years old on the alleged disability onset date, has a college education.  Tr. 31.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since July 18, 2009, the alleged onset date[.]"  Tr. 12.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments:  "status post severe diabetic ketoacidosis event, July 2009, with renal failure and anemia, resolved; obesity; diabetes mellitus type 2, currently uncomplicated; possible headaches; right side weakness resolved; disturbance/loss of protective sensation, right foot, without weakness, deformity, callus, pre-ulcer or history of ulceration; obesity; hypertension; history of edema, resolved; mood disorder; possible major depressive disorder, recurrent moderate; panic disorder without agoraphobia[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 15.  Next, the ALJ articulated Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except [Plaintiff] can sit, stand, and walk up to six hours each over the course of an eight-hour workday.  [Plaintiff] does not suffer any manipulative or visual limitations.  [Plaintiff] cannot climb ladders, ropes, or scaffolds.  [Plaintiff] can frequently climb ramps and stairs.  [Plaintiff] can frequently balance, stoop, kneel, crouch, and crawl.  [Plaintiff] can frequently work in humidity, wetness, and extreme temperatures.  [Plaintiff] cannot work at unprotected heights.  [Plaintiff] cannot work directly with hazardous machinery.  However, he can work in close proximity of hazardous machinery.  He can also work with non-hazardous machinery.  [Plaintiff] can frequently operate a commercial vehicle.  [Plaintiff] possesses more than sufficient concentration, persistence, and pace necessary to understand, remember,

5

>and carry out simple instructions in the performance of simple work activity over the course of an eight-hour workday, with all customary rest breaks. [Plaintiff] does not require intensive or frequent supervision. However, supervision should be supportive and non-confrontational. [Plaintiff] is capable of independent judgment regarding simple work activity. However, changes to his work activity or settings should be infrequent. Contact with coworkers can be frequent, but should be non-intensive. Contact with the public should be occasional and non-intensive.

Tr. 17. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "was unable to perform any past relevant work[.]" Tr. 30. Finally, at Step Five, and relying upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can also perform[.]" Tr. 31. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 18, 2009, through the date of th[e] decision[.]" Tr. 32.

## IV. PLAINTIFF'S CLAIMS

The sole issue Plaintiff presents for this court's consideration in review of the ALJ's decision is whether "[t]he Commissioner's decision should be reversed because the substantial evidence of record does not support the ALJ's [RFC] assessment" "as both the physical and mental restrictions found by the ALJ are less restrictive than any other RFC, physical or mental, found in the record[.]" Pl.'s Br. (Doc. 12) at 5, 7. Although presented as one issue, Plaintiff's argument appears to be four-fold:[5] (1) that the ALJ erred in discounting the opinion of Plaintiff's treating psychiatrist, Dr. Thomas Merritt;

---

[5] The court uses the phrase "appears to be four-fold" because Plaintiff's argument section, although not separated into distinct arguments, is interwoven with what appear to be four distinct claims.

(2) that the ALJ did not properly consider the opinion of the consultative examiner, Dr. Fernell Warren, or the state agency medical consultant, Dr. Robert Estock; (3) that the ALJ "relied upon his own interpretation of the medical evidence in place of that of a reviewing physician" when formulating Plaintiff's RFC; and (4) that "the ALJ may be seen to have proffered an incomplete hypothetical question to the VE." *Id.* at 6-14. The court will discuss each argument separately below.

V. **DISCUSSION**

    A. **Whether the ALJ properly considered the opinion of Plaintiff's treating physician**

Plaintiff first argues that the ALJ's opinion is less restrictive than the opinion of Dr. Thomas Merritt, Plaintiff's treating psychiatrist, which, Plaintiff argues, should have been given substantial weight. Pl.'s Br. (Doc. 12) at 7. Specifically, Plaintiff points to Dr. Merritt's opinion that Plaintiff

> would have *marked* limitations in the areas of (1) his ability to get along with co-workers or peers, (2) degree of constriction of interests, (3) ability to understand, remember, [and] carry out complex instructions, (4) ability to maintain attention and concentration for extended periods, (5) ability to perform activities within a schedule, maintain regular attendance[,] and be punctual within customary tolerances, (6) ability to sustain a routine without special supervision, and (7) the ability to respond appropriately to supervisor, changes in the work setting, and customary work pressures.

*Id.* at 8-9. Plaintiff asserts that, contrary to the ALJ's determination that "the physical healthcare records are grossly devoid of any objective or medical evidence from which anyone could assess or guess there was marked limitation in mental functioning" (Tr. 29), "the record does in fact make reference to impairments in psychological functioning." Pl.'s Br. (Doc. 12) at 9. Later in his brief, Plaintiff clarifies that the "most notabl[e]" of

7

the medical evidence of record that references psychological impairments, aside from Dr. Merritt's opinion, can be found in the opinion of Dr. Fernelle Warren.[6] *Id.* at 14.

In general, "[a]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). If the ALJ disregards a treating physician's opinion, or affords it less than "substantial or considerable weight," the ALJ must "'clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41).

In addressing Dr. Merritt's opinion, the ALJ explained as follows:

> [T]he medical records following [Plaintiff's] appeal [of the ALJ's decision] . . . show no evidence of mental or physical disability and questionable evidence of severe impairment. [The records of b]oth the mental health care provider and the physical care provider show routine functioning with minimal limitation, if any.
>
> Nonetheless, and incredulously, on November 7, 2012, [Plaintiff]'s treating psychiatrist[, Dr. Merritt,] and therapist [Deena Croley, MS] offered a medical source opinion indicating [Plaintiff] suffered marked limitation in his ability for the following activities: getting along with co-workers or peers; understanding, remembering, and carrying out complex instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; sustaining a routine without special supervision; to responding appropriately to supervision; responding

---

[6] The ALJ's treatment of Dr. Warren's opinion is discussed in-depth below.

8

appropriately to changes in the work setting; and responding to customary work pressures. They further advised that [Plaintiff] suffers extreme limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and his ability to perform at a consistent pace without an unreasonable number and length of rest periods.

As suggested immediately above, the undersigned f[i]nds this report nothing less than incredible. The undersigned carefully chronicled and detailed [Plaintiff]'s physical and mental healthcare. That evidence includes this provider's records. The physical healthcare records are grossly void of any objective or medical evidence from which anyone could assess or guess there was marked limitation in mental functioning. In fact, [Plaintiff]'s subjective reports to physical providers—subsequent to his recovery from the event in 2009—are void of any indication of even moderate limitation in mentation.

The reader is reminded that during the period that he purportedly suffered marked and extreme limitation, [Plaintiff] was managing a household and homeschooling three children. As noted above, his own parents suggested that he return to work.

The evidence is all very clear. However, the treatment notes are more instructive. The notes do not contain diagnoses, treatment, or restrictions consistent with such an alarming assessment. A month earlier, the same provider completed a mental status evaluation that failed to reveal any indication of deficit in functioning. The notes show that they were aware that he stayed home with his children; nonetheless, no restrictions were offered in light of his purportedly severely limited mentation. The undersigned finds that managing a home and three children, including home schooling, is no less daunting than performing eight hours of simple work activity. In fact, common sense dictates that there is a plausible argument that such a routine would be more daunting per his precarious state per the medical source statement.

Nothing is more telling than the first visit after that statement, November 28, 2012. The mental status evaluation was literally void of deficit. This is crucial in that the provider noted that [Plaintiff] had a date for his hearing before the undersigned.

The undersigned carefully considered all evidence of record, including [Plaintiff]'s testimony. The undersigned firmly concludes that the mental healthcare provider's mental source statement is not consistent with or

9

> supported by the medical or objective evidence of record, including their own treatment records. The medical source statement [by Dr. Merritt] warranted and received no weight.

Tr. 29-30 (internal citations omitted). Thus, the ALJ thoroughly articulated no less than four distinct bases for his rejection of Dr. Merritt's opinion, including that it is inconsistent with (1) the overall evidence in the record, (2) his own treatment records, (3) Plaintiff's daily activities, and (4) the objective medical findings. *Id.* It is abundantly clear that the ALJ's rejection of Dr. Merritt's opinion was not "a broad rejection" that would leave the court to wonder whether the opinion had been considered as a whole. In sum, Plaintiff has not shown that the ALJ lacked good cause in discounting the opinion of Dr. Merritt, and the ALJ's decision is supported by substantial evidence.

**B.     Whether the ALJ properly considered the opinion of the consultative examiner and state agency medical consultant**

Next, Plaintiff argues that "the ALJ's RFC finding is less restrictive than that of Dr. Fernelle Warren" and "even less restrictive than that of State Agency medical consultant Dr. Robert Estock." Pl.'s Br. (Doc. 12) at 9-10. Thus, it appears Plaintiff is challenging the weight the ALJ afforded to the opinions of Drs. Warren and Estock. Additionally, Plaintiff asserts that "the ALJ failed to address Dr. Estock's medical opinion as to the limitations regarding work environment and absenteeism." *Id.* at 12.

First, Drs. Warren and Estock were not treating physicians. Consequently, their opinions were not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In addition, the ALJ clearly set forth his reasons for rejecting specific portions of their opinions. With respect to the opinion of Dr. Warren, a consultative

examiner, the ALJ pointed out that Plaintiff's subjective reports to Dr. Warren, on which Dr. Warren heavily relied, "range[d] from exaggeration to misstatement," and "severely lacked consistency." Tr. 25. The ALJ also noted that Plaintiff failed to report his full work and education history to Dr. Warren. Plaintiff stated that he last worked as a waiter, making no mention of his role as an assistant manager, and altogether failed to mention his college degree in emergency medicine. *Id.* Taking issue with Dr. Warren's statement that "[t]here were no discrepancies between [Plaintiff's] report [to Dr. Warren] and the content of historical documents reviewed by [Dr. Warren]," the ALJ stated that "if [Dr. Warren] saw no[ discrepancies], the [ALJ] questions how thoroughly the doctor reviewed the historical documents." Tr. 26.

For similar reasons, the ALJ doubted the opinion of Dr. Estock, a state agency medical consultant, specifically stating that "Dr. Estock clearly relied on the results of the evaluation [completed by Dr. Warren]." Tr. 26. The ALJ concluded the discussion of Dr. Warren and Dr. Estock's opinions by stating that "their reports warranted some weight," but that, beyond the limitations included in the RFC, "their opinions are not consistent with the medical and objective evidence of record or even the written report of activities as opposed to reports of [Plaintiff's] limitation." *Id.*

Plaintiff's argument that the ALJ failed to address Dr. Estock's opinion that Plaintiff had limitations regarding work environment and absenteeism has no merit. As just discussed, the ALJ explained why Dr. Estock's opinion was given only "some weight," and thus, to the extent portions of his opinion were not consistent with the RFC, the ALJ implicitly rejected those portions of the opinion.

11

Because the court does not reweigh the evidence anew, and the ALJ articulated specific reasons for discounting the opinions of Drs. Warren and Estock, which are supported by substantial evidence, there was no reversible error in the weight given to the doctors' opinions.

> **C. Whether the ALJ erred in formulating Plaintiff's RFC by relying on his own interpretation of the medical evidence in place of that of a reviewing physician**

Plaintiff also argues that "the ALJ's RFC findings are not supported by substantial evidence as both the physical and mental restrictions found by the ALJ are less restrictive than any other RFC, physical or mental, found in the record." Pl.'s Br. (Doc. 12) at 7. Plaintiff continues, "[T]he ALJ synthesized his own RFC while rejecting portions of every RFC found in the record." *Id.* Thus, Plaintiff contends that, in formulating Plaintiff's RFC, "the ALJ relied upon his own interpretation of the medical evidence in place of that of a reviewing physician," which Plaintiff argues is error because "an ALJ cannot substitute his judgment for that of the medical and vocational experts." *Id.* at 13. Specifically, Plaintiff asserts that "no examining or reviewing source ever opined that [Plaintiff] would be capable of performing the demands of medium work," and that "Dr. [Robert] Heilpern found [Plaintiff] capable of limitations consistent with light work." *Id.* at 12, 13.

At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a

12

finding about the RFC.  § 404.1545(a)(3), § 416.945(a)(3).  An ALJ's RFC assessment may be supported by substantial evidence, even in the absence of any examining medical source opinion addressing Plaintiff's functional capacity.  *See, e.g.*, *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, 2012 WL 3206482, at *9 (S.D. Ala. July 18, 2012) ("an ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source.").

The ALJ had before him sufficient medical evidence from which he could make a reasoned determination of Plaintiff's RFC.  To the extent that Plaintiff challenged the ALJ's treatment of medical opinions of record, those arguments have been rejected above.  Because the regulations make clear that it is the ALJ, not a physician, who is responsible for assessing a claimant's RFC, the ALJ did not err by doing so.

### D.     Whether a complete hypothetical question was posed to the VE

Finally, Plaintiff argues that, based on the ALJ's treatment of [the opinions of Drs. Warren and Estock], the ALJ may be seen to have proffered an incomplete hypothetical question to the VE."  Pl.'s Br. (Doc. 12) at 11.  Plaintiff continues, "[T]he ALJ clearly failed to include specific limitations[,] which he failed to properly reject, calling into question the completeness of his hypothetical question to the VE."  *Id.* at 12.

The court has reviewed the ALJ's determination to reject portions of the opinions of Drs. Merritt, Warren, and Estock and finds that the decision is supported by substantial evidence. Once those portions of the opinion were rejected, "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Accordingly, the ALJ did not err by relying on the testimony of the VE.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

Done this 25th day of August, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE